,

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTEBAN RIVERO,

                                    Petitioner,

v.

KRISTI NOEM, et al,

                                    Respondents.

Case No.:  26-cv-0148-BJC-JLB

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241 AND DENYING TRO AS MOOT**

**[ECF NOS. 1, 2]**

Pending before the Court is Esteban Rivero's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner also filed a Motion for Temporary Restraining ("TRO"). ECF No. 2. Respondents filed a response that simultaneously addressed the Petition and the TRO.  ECF No. 6.  On January 22, 2026, Petitioner filed an Amended Petition for Writ of Habeas Corpus. ECF No. 6. Respondents filed a Return to the Amended Petition, and Petitioner filed a Traverse.  For the reasons set forth below, the Petition is **GRANTED IN PART AND DENIED IN PART.**

## I.    BACKGROUND

Petitioner is a native and citizen of Cuba who entered the United States in 1995. ECF No. 1 at 2.  On December 20, 2006, Petitioner was convicted of racketeering under Florida Statute § 865.03(4) and filing fraudulent insurance claims pursuant to Florida Statute § 817.234(1).  ECF No. 8-2 ¶ 5.  Petitioner was sentenced to 15 years in prison. *Id.* On September 28, 2010, after release from state custody, Petitioner was transferred to ICE

1

custody and was issued a Notice to Appear, which initiated removal proceedings under Section 237a(2)(A)(iii) of the Immigration and Nationality Act (INA), because he was considered an alien who has been convicted of an aggravated felony. *Id.* at ¶ 6. On December 10, 2010, an immigration judge issued a final order of removal ordering Petitioner removed to Cuba, but the judge granted a deferral of that removal under the Convention Against Torture. *Id.* at ¶¶ 7, 8. On December 13, 2010, Petitioner was released under an Order of Supervision pending removal to Cuba. *Id.* at ¶8.  On December 16, 2025, the Cuban government declined to accept Petitioner for repatriation.  Nunez Declaration ¶11, ECF No.5-1.  Since his release on supervision, Petitioner consistently appeared for his annual check-in with ICE, applied for and received a work permit, and had no violations of supervision.  Exhibit A, ¶¶ 3,4, ECF 6-1.

On November 1, 2025, Immigration and Customs Enforcement (ICE) re-detained Petitioner in Miami, Florida to execute his removal order. *Id.* at ¶ 9. Petitioner has remained in ICE custody since that date.   On the same day, ICE provided Petitioner with a Notice of Revocation of Release that purportedly provided Petitioner with formal notice of the reason for revocation of his order of supervision. *Id.*, Exhibit 1 (Notice of Revocation of Release). In the Notice, ICE informed Petitioner that:

> [t]here has been a change in circumstances and Immigration and Customs Enforcement has determined that you can be expeditiously removed from the United States. Your case will be reviewed by the government of Mexico for issuance of a travel document.

Exh. 1. Petitioner refused to sign the Notice.  On November 26, 2025, ICE's Miami Enforcement and Removal Operations (ERO) field office provided Petitioner with written notice of his potential removal to Mexico. *Id.* at ¶ 10, Exh. 2 (Third Country Notice). On December 31, 2025, Petitioner was transferred to the Otay Mesa Detention Center in San Diego, California, where he remains detained.  Nunez Declaration ¶10, ECF No. 5-1. However, Petitioner's case continues to be assigned to the Miami Field Office.  Id. ¶11.

On January 8, 2026, San Diego ICE ERO attempted to remove Petitioner to Mexico,

26-cv-148-BJC-JLB

but Mexico denied Petitioner's entry. *Id.* ICE-ERO Miami claims it is actively working to identify a third country to which Petitioner may be removed. *Id.* at ¶ 12.

Petitioner requests that the Court order Respondents to (1) immediately release him from custody under the same conditions of supervision that were in place before his re-detention, (2) enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal; (3) enjoin Respondents from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(*l*), 241.13(i), and any other applicable statutory and regulatory procedures; (4) enjoin Respondents from removing Petitioner to a third country, unless they provide a) written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; b) a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal; c) if Petitioner is found to have demonstrated "reasonable fear" of removal to the country, Respondents move to reopen Petitioner's immigration proceedings; and d) if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, a meaningful opportunity, and a minimum of fifteen days, for Petitioner to seek reopening of his immigration proceedings. ECF No. 1 at 17. For the following reasons, the Court **GRANTS** the Petition.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### III.   <u>DISUCSSION</u>

**A.   <u>Jurisdiction</u>**

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18.  Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998).

The Court concludes that it has jurisdiction because Petitioner does not challenge Respondents' decision to execute a removal order, which would bar this Court's review. Instead, he challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties.   Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

**B.   <u>Lawfulness of Petitioner's Continued Detention Under 8 U.S.C. § 1231</u>**

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order.  *See* 8 U.S.C. § 1231.  It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2). In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a

26-cv-148-BJC-JLB

noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

The Court finds that Petitioner has satisfied his burden under *Zadvydas*. Petitioner was ordered removed in December 2010, and the six-month presumptive detention period expired long ago. Petitioner has presented evidence that removal to Cuba is uncertain. Removal to Mexico is foreclosed, as Respondents acknowledge that "ICE attempted to remove the Petitioner to Mexico on January 8, 2026, but the Mexican government denied repatriation." Declaration of Carlos Nunez, ICE Supervisory and Deportation Officer, ECF No. 8-2 ¶ 11. Indeed, there is also no significant likelihood he may be removed in the reasonably foreseeable future to a third country as Officer Nunez states: "Petitioner's case is assigned to the Miami Field Office and Miami ERO *will attempt* to identify a third country that *may be willing* to accept Petitioner for removal." ECF No. 8-2 ¶ 12 (emphasis added).

While Respondent contends that "ICE has worked expeditiously to effectuate his resettlement in a third country," the evidence before the Court does not demonstrate a likelihood of removal in the "reasonably foreseeable future" but instead underscores the uncertainty and unlikely possibility that a third country may be identified in the near future. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Continued detention must be justified by a significant likelihood of removal within a reasonably foreseeable period, and Respondents have failed to meet that standard.

//

### C. **Procedural Safeguards Governing Revocation of Order of Supervision**

The Government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations also govern the revocation of such noncitizens' release. Section 241.13(i)(2), which provides: "The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Both 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Here, Petitioner contends that ICE failed to follow its own regulations by not producing evidence that his re-detention was due to changed circumstances or that he received a prompt interview in connection with his re-detention. ECF No. 1 at 6. The Court agrees.

#### i. *Notice and Changed Circumstances*

Subsection 241.13(i)(3) provides that a noncitizen "will be notified of the reasons for revocation of his or her release." Here, Petitioner was arrested on November 1, 2025, and was provided a Notice of Revocation that same day, which he refused to sign. Traverse, Ex. 1, ECF No. 5-2. The Notice stated that "[t]here has been a change in circumstances and [ICE] has determined that you can be expeditiously removed from the United States. Your case will be reviewed by the government of Mexico for issuance of a travel document." *Id.* The possibility that the Mexican government would review his case for issuance of travel documents does not describe a change in circumstances but instead describes the *possibility* of changed circumstances. Instead, the evidence before the Court shows that "ERO sought to remove Petitioner to Mexico" on December 16, 2025, forty-five days after he was arrested, which suggests that ICE had not yet requested travel documents at the time of the re-detention despite the proffered "change in circumstances."

26-cv-148-BJC-JLB

ECF No. 8-2 ¶ 11.  Accordingly, Petitioner was not given sufficient notice of changed circumstances to satisfy section 241.13(i)(3).

### ii. *Interview*

Second, the regulation requires that an informal interview be conducted "promptly after [the noncitizen's] return to Service custody."  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).  This requirement ensures that noncitizens have an immediate opportunity to respond to the stated reasons for revocation and to present evidence that removal is not significantly likely in the reasonably foreseeable future.  Respondent contends that an informal interview was conducted, however there is no evidence in the record that describes the time, place, or details of that interview.  Therefore, the Court is not satisfied that this requirement was satisfied.

### iii. *Likelihood of Removability*

Subsection 241.13(i)(2) requires ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances." Petitioner was re-detained on November 1, 2025, and ICE has unsuccessfully attempted to remove Petitioner to Cuba, his country of origin. There is no evidence that Cuba will accept Petitioner, and travel documents have yet to be obtained. In fact, Cuba expressly declined to accept Petitioner for repatriation on December 16, 2025. Moreover, it was not until January 8, 2026, that ICE attempted removal to a third country, Mexico, which also failed. Accordingly, there is no reasonable basis to conclude that Petitioner's removal is imminent or reasonably foreseeable. For these reasons, the Court finds that Petitioner has shown that ICE failed to follow their own regulations.

For the reasons set forth above, the Court concludes that Petitioner's continued detention is unlawful. Respondents have not demonstrated that Petitioner's removal is significantly likely in the reasonably foreseeable future, as required under *Zadvydas*, 533 U.S. at 701.  Petitioner has therefore met his burden of showing that his continued detention is no longer authorized by statute and is constitutionally impermissible. Moreover, Respondents failed to comply with the procedural safeguards set forth in 8 C.F.R. §§ 241.4

and 241.13, including the requirements for notice of changed circumstances, a prompt interview following revocation of release, and a likelihood of removal in the reasonably foreseeable future. These failures constitute violations of both binding agency regulations and the fundamental due process rights guaranteed by the Fifth Amendment.

## IV. CONCLUSION AND ORDER

Upon consideration of the petition for writ of habeas corpus, ECF No. 1, and for good cause shown:

1. Respondents are **ORDERED** to immediately release the petitioner from the Otay Mesa Detention Center.

2. Respondents are **ENJOINED** from re-detaining Petitioner unless there has been a change in circumstances that creates a reasonable likelihood of his removal in the reasonably foreseeable future.

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.

4. Respondents are further **ENJOINED** from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4; 241.13.

5. Respondents are also **ENJOINED** from removing Petitioner to any country other than Cuba, without first following the procedures of 8 U.S.C. § 1231(b)(2).

6. Petitioner's Motion for TRO is **DENIED AS MOOT.** ECF No. 2.

**IT IS SO ORDERED.**

March 9, 2026

_____

Honorable Benjamin J. Cheeks
United States District Judge

26-cv-148-BJC-JLB